**GIBBONS P.C.**
Karen A. Giannelli, Esq.
Mark B. Conlan, Esq.
Brett S. Theisen, Esq.
One Gateway Center
Newark, New Jersey  07102
Telephone:  (973) 596-4500
Facsimile:   (973) 596-0545
E-mail:  kgiannelli@gibbonslaw.com
           mconlan@gibbonslaw.com
           btheisen@gibbonslaw.com
*Counsel to the Debtors
and Debtors-in-Possession*

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| In re:<br><br>NEW ENGLAND MOTOR FREIGHT, INC., *et al.*,<br><br>Debtors.[1] | Chapter 11<br><br>Case No. 19-12809 (JKS)<br><br>(Jointly Administered) |
| NEW ENGLAND MOTOR FREIGHT, INC. *et al.*,<br><br>Plaintiffs,<br><br>v.<br><br>PARTIES LISTED ON EXHIBIT A TO THE COMPLAINT and JOHN DOES 1-100,<br><br>Defendants. | Adv. Pro. No. 19-_____ (JKS) |

**DEBTORS' COMPLAINT FOR INJUNCTIVE AND DECLARATORY RELIEF
(I) PRELIMINARILY ENJOINING CERTAIN ACTIONS AGAINST NON-DEBTORS,
OR (II) IN THE ALTERNATIVE, DECLARING THAT THE AUTOMATIC STAY
APPLIES TO SUCH ACTIONS AND (III) GRANTING A TEMPORARY
<u>RESTRAINING ORDER PENDING A FULL HEARING ON THE MOTION</u>**

---

[1] The Debtors in these chapter 11 cases and the last four digits of each Debtor's taxpayer identification number are as follows:  New England Motor Freight, Inc. (7697); Eastern Freight Ways, Inc. (3461); NEMF World Transport, Inc. (2777); Apex Logistics, Inc. (5347); Jans Leasing Corp. (9009); Carrier Industries, Inc. (9223); Myar, LLC (4357); MyJon, LLC (7305); Hollywood Avenue Solar, LLC (2206); United Express Solar, LLC (1126); and NEMF Logistics, LLC (4666).

2714777.2 115719-100281

The above-captioned debtors and debtors in possession (the "Debtors" or the "Company"), by and through their undersigned proposed counsel, incorporate the statements contained in (i) the *Declaration of Vincent Colistra in Support of Debtors' Chapter 11 Petitions and First Day Motions* (the "First Day Declaration")[2] [Case No. 19-12809, Dkt. No. 22], (ii) the *Declaration of Ernest Hardy* (the "Hardy Decl.") and (iii) the *Declaration of Brett S. Theisen,* filed contemporaneously herewith, and further states as follows:

## INTRODUCTION

1. The Debtors commenced the above-captioned chapter 11 cases to conduct an orderly liquidation of their assets and wind-down of their businesses, toward the goal of preserving and maximizing the value of their assets for all creditors. The relief sought by this adversary proceeding—extending and/or applying the automatic stay to the commencement or continuation of certain civil actions seeking liability against the Debtors' truck drivers for actions taken in the course of their employment with the Debtors—is critical to the Debtors' ability to proceed with and achieve the purpose for which it commenced these chapter 11 cases.

2. The Debtors are the real parties in interest in any such action against the drivers because of the Debtors' liability under *respondeat superior* and/or other agency doctrines and/or laws, such that a judgment against a driver is akin to judgment against the Debtors. The Debtors would be severely prejudiced if an action can proceed against a driver (who may be left *pro se* because the Debtors have historically provided counsel[3] and indemnity to their drivers in tort actions) because the likely result would be a default judgment against the driver—and ultimately

---

[2] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the First Day Declaration.

[3] Notably, the Debtors' own in-house counsel is presently counsel of record to the individual drivers (along with counsel to the Debtors) in approximately 41 active lawsuits. The attorney cannot unilaterally withdraw from those representations, and as such his involvement is an ongoing strain on the estates' resources.

2

against the Debtors—for the full amount sought in the complaint. The Debtors do not believe that their drivers have the financial wherewithal to satisfy any material liability absent contribution, indemnity, or other reimbursement from the Debtors themselves.

3. In particular, through this Complaint, the Debtors seek a preliminary injunction under 11 U.S.C. §§ 105(a) and 362(a) enjoining the continuation or commencement of any action by the defendants in this adversary proceeding (listed on **Exhibit A** and, collectively, the "Defendants") seeking to (i) hold the Debtors' employees and/or former employees listed on **Exhibit A** attached hereto (collectively, the "Protected Drivers")[4] liable for certain automobile-related claims committed in the course of their employment with the Debtors (the "Auto Liability Claims"), and/or (ii) lift the stay to proceed solely against excess coverage that may be available pursuant to the Debtors' Excess Indemnity Contracts (as defined and described below). In the alternative, the Debtors seek a declaration that 11 U.S.C. § 362(a) applies to prohibit the commencement or continuation of Auto Liability Claims against the Protected Drivers and/or against the excess coverage. The Debtors also seek a temporary restraining order to immediately effectuate the requested injunctive or declaratory relief pending a full hearing on the request for a preliminary injunction.

4. Contemporaneously with the filing of this complaint, the Debtors are also filing a motion (the "Motion"), which requests the relief sought in this proceeding.

### Jurisdiction and Venue

5. This Court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. §§ 157 and 1334. This adversary proceeding is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A) and (G).

---

[4] The Debtors reserve the right to seek to amend the list of Protected Drivers, and in particular, to request that additional parties be included as Protected Drivers.

6. Venue is proper in this district pursuant to 28 U.S.C. § 1409.

## Basis for Relief

7. The statutory bases for the relief requested herein are sections 105(a) and 362(a) of the Bankruptcy Code.

8. The Debtors have commenced this adversary proceeding pursuant to Rules 7001(7) and (9) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").

9. No prior request for the relief requested herein has been made to this or any other court.

## General Background

10. On Monday, February 11, 2019 (the "Petition Date"), each of the above-captioned Debtors filed voluntary petitions for relief under chapter 11, title 11, United States Code, 11 U.S.C. §§ 101, et seq. (the "Bankruptcy Code"), thereby initiating the above-captioned chapter 11 cases (the "Chapter 11 Cases"). With the exception of Eastern Freight Ways, Inc. ("Eastern") and Carrier Industries, Inc. ("Carrier"), which will be sold as going-concerns, the Debtors, as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code, are engaged in an orderly liquidation of their assets and wind-down of their businesses, toward the goal of preserving and maximizing the value of their assets for all creditors. An official committee of unsecured creditors was appointed in these Chapter 11 Cases on or about February 25, 2019.

11. The Debtors offer a broad range of transportation services. Debtor New England Motor Freight, Inc. ("NEMF") was founded in 1918 in Elizabeth, New Jersey and is a leading less than truckload ("LTL") carrier with a focus in the Mid-Atlantic, Midwest and Northeast United States. NEMF also offers LTL services to its customers across the United States and Canada through a number of partnerships and interline carrier arrangements with other LTL providers. In

addition to the LTL business the Debtors provide truckload ("TL") services through Eastern. Debtor Jans Leasing Corp. ("Jans Leasing") is a trucking equipment lessor, Debtor Carrier offers dedicated third party logistics services, Debtor Apex Logistics ("Apex") offers transportation brokerage services, and Debtor NEMF World Transport, Inc. ("NEWT") provides non-vessel operation common carrier operations between the United States and Puerto Rico. Debtor NEMF Logistics, LLC ("Logistics") is a third-party logistics company specializing in logistics management services, including warehousing, software, brokerage and support. Debtors Myar, LLC ("Myar") and MyJon, LLC ("MyJon") are both dormant and had no economic actively in 2018. Debtors Hollywood Avenue Solar, LLC ("Hollywood Solar") and United Express Solar, LLC ("United Solar") were formed to acquire solar arrays for terminals in South Plainfield and Pennsauken, New Jersey, respectively, at which the Debtors operate.

12. MyJon, Hollywood Solar and United Solar are wholly-owned subsidiaries of NEMF. Myar is a wholly-owned subsidiary of Eastern. The remaining Debtors are all sister entities owned solely by The Shevell Dynasty Trust, or by the Shevell Dynasty Trust and Myron P. Shevell.

13. As of the Petition Date, the Debtors employed approximately 3,450 full-time and part-time employees. Approximately 1,900 of the employees are members of International Association of Machinists and Aerospace Workers, AFL-CIO (the "Union") and are covered by a series of collective bargaining agreements with the Union.

14. In 2017, the Debtors' businesses generated consolidated gross revenues of approximately $373 million. For 2018, the Debtors estimate that their businesses have generated consolidated revenues of approximately $370 million.[5]

---

[5] The Debtors' books for fiscal year ending December 29, 2018 are not yet final. All references to 2018 financials herein are based on the Debtors' preliminary results and remain subject to change.

15. The Debtors' principal place of business and corporate headquarters is located at 1-71 North Avenue East, Elizabeth, New Jersey, 07201-2859. The Debtors operate from 36 trucking terminals located throughout the Mid-Atlantic, the Northeast and Midwest, and two additional locations in New Brunswick, NJ and Jordan, NY, which are used primarily for administrative staff and for Eastern operations.

16. Additional information regarding the Debtors' businesses, the events leading to the Chapter 11 Cases, and the facts and circumstances supporting the relief requested herein are set forth in the First Day Declaration [Dkt. No. 22], which is incorporated herein by reference.

17. The Debtors commenced these Chapter 11 Cases to maximize the value of their assets and to effectuate an orderly liquidation process for the benefit of all creditors. The orderly liquidation of the Debtors will involve: (i) the immediate wind-down of nine of the eleven Debtor entities; (ii) the orderly collection of the Debtors' accounts receivables; (iii) the sale of the Debtors' two most profitable entities, Eastern and Carrier, as going-concerns pursuant to a Court-approved Section 363 bidding and auction process; (iv) sales of the Debtors' remaining assets (primarily rolling stock, equipment, machinery and inventory), which are located across the Debtors' 36 terminals; and (v) the sale of unencumbered real property.

18. The Debtors are also defendants in approximately seventy-three (73) active lawsuits pending in the state and federal courts across the country related to alleged Auto Liability Claims. The cumulative effect, if all of this litigation is allowed to proceed against the Protected Drivers and/or to recover from the Debtors' Excess Indemnity Contracts, amounts to a massive drain on the bankruptcy estates' time and resources.

## The Parties

19. NEMF is a New Jersey corporation with its principal place of business and corporate headquarters located at 1-71 North Avenue East, Elizabeth, New Jersey, 07201-2859.

20. Eastern is a New Jersey corporation with its principal place of business and corporate headquarters located at 1-71 North Avenue East, Elizabeth, New Jersey, 07201-2859.

21. Carrier is a New Jersey corporation with its principal place of business and corporate headquarters located at 1-71 North Avenue East, Elizabeth, New Jersey, 07201-2859.

22. NEWT is a New Jersey corporation with its principal place of business and corporate headquarters located at 1-71 North Avenue East, Elizabeth, New Jersey, 07201-2859.

23. Logistics is a New Jersey corporation with its principal place of business and corporate headquarters located at 1-71 North Avenue East, Elizabeth, New Jersey, 07201-2859.

24. Apex is a Delaware corporation with its principal place of business and corporate headquarters located at 1-71 North Avenue East, Elizabeth, New Jersey, 07201-2859.

25. Jans Leasing is a Delaware corporation with its principal place of business and corporate headquarters located at 1-71 North Avenue East, Elizabeth, New Jersey, 07201-2859.

26. Myar is a Delaware limited liability company with its principal place of business and corporate headquarters located at 1-71 North Avenue East, Elizabeth, New Jersey, 07201-2859.

27. MyJon is a Delaware limited liability company with its principal place of business and corporate headquarters located at 1-71 North Avenue East, Elizabeth, New Jersey, 07201-2859.

2714777.2 115719-100281

28. Hollywood Solar is a New Jersey limited liability company with its principal place of business and corporate headquarters located at 1-71 North Avenue East, Elizabeth, New Jersey, 07201-2859.

29. United Solar is a New Jersey limited liability company with its principal place of business and corporate headquarters located at 1-71 North Avenue East, Elizabeth, New Jersey, 07201-2859.

30. Each named Defendant listed in **Exhibit A**[6] is a plaintiff in a pending civil action against one or more of the Debtors. Certain Defendants have already commenced actions against one or more of the Protected Drivers. The Debtors anticipate that the filing of the Chapter 11 Cases may lead additional Defendants to also commence actions to pursue Auto Liability Claims against the Protected Drivers in an effort to avoid the automatic stay.

31. Each of Defendants John Does 1-100 is a prospective plaintiff who may, at any time while the above-captioned chapter 11 case is pending, seek to commence an action to pursue a tort claim against any of the Protected Drivers.

32. The Protected Drivers are employees or former employees of the Debtors set forth on **Exhibit A**.[7]

### Factual Background

**THE DEBTORS' TRUCKING FLEET EXCESS INDEMNITY CONTRACTS**

33. The Debtors have a self-retention with respect to Auto Liability Claims for their trucking fleet up to the first $500,000 per occurrence under certain excess indemnity contracts.

---

[6] The Defendants' names appear as the plaintiffs in the actions listed in the "Case Name" column to Exhibit A.
[7] The Protected Drivers' names appear as co-defendants (along with one or more of the Debtors) in the actions listed in the "Case Name" column to Exhibit A.

34. The Debtors are party to an Excess Indemnity Contract with United States Fire Insurance Company ("United Fire") covering the period April 10, 2018 through April 10, 2019 related to Auto Liability Claims (the "United Fire Contract").

35. The Debtors are party to a Large Fleet Trucking Excess Contract with Protective Insurance Company ("Protective," and together with United Fire, the "Carriers") covering the period April 10, 2017 to April 10, 2018 (the "2017-2018 Protective Contract").

36. The Debtors are party to a Large Fleet Trucking Excess Contract with Protective covering the period April 10, 2016 to April 10, 2017 (the "2016-2017 Protective Contract").

37. The Debtors are party to a Large Fleet Trucking Excess Contract with Protective covering the period April 1, 2015 to April 11, 2017 (the "2015-2017 Protective Contract").

38. The Debtors are party to a Large Fleet Trucking Excess Contract with Protective covering the period April 10, 2014 to April 10, 2016 (the "2014-2016 Protective Contract," and collectively with the 2015-2017 Protective Contract, the 2016-2017 Protective Contract, the 2017-2018 Protective Contract, and the United Fire Contract, the "Excess Indemnity Contracts").

39. The terms and provisions contained in each of the Excess Indemnity Contracts are materially the same across all of the Excess Indemnity Contracts.

40. The Excess Indemnity Contracts are not insurance policies.

41. Under the Excess Indemnity Contracts' self-retention provisions, the Debtors are obligated to pay the first $500,000 in damages, fees and costs (the "Self-Retention"). The Carriers are only obligated to reimburse a Debtor after the Debtor has paid out any settlement or verdict, and then only for payments, fees, including attorneys' fees, and costs that exceed the $500,000 Self-Retention.

2714777.2 115719-100281

42. Under the Excess Indemnity Contracts, the Debtors—not the Carriers—are responsible to manage and administer claims, subject to the Carriers' right, at their sole discretion, to assume administration of claims involving amounts in excess of the Self-Retention.

**THE PENDING CIVIL ACTIONS**

1. As noted above, there are approximately 73 active lawsuits involving Auto Liability Claims with loss dates since 2014 pending against the Debtors (with approximately 63 of those lawsuits having a Protected Driver named as a co-defendant) in state and federal courts across multiple states (the "Civil Actions"). The Civil Actions are identified on **Exhibit A**.

43. The Debtors manage Auto Liability Claims primarily through the efforts of Ernest Hardy, the Debtors' Vice President of Risk Management, and Todd Rubenstein, the Debtors' General Counsel. Mr. Hardy's responsibilities begin at the first instance when a claim is asserted against one of the Debtors, and continue through the pre-litigation phase. Once litigation is commenced on a claim, the matter is then actively managed either by Mr. Rubenstein or an outside law firm, depending on the state in which the case is filed. In some instances, Mr. Hardy will continue to monitor the litigation along with outside counsel, and in some cases Mr. Rubenstein oversees and monitors outside counsel.

44. In the vast majority of Auto Liability Claims that reach the litigation stage, plaintiffs name the Debtors' truck drivers as individual defendants, in addition to suing the Debtors. Historically, the Debtors' attorneys have also appeared on behalf of the drivers. The only exception to this practice has been in cases where a driver is accused of some criminal activity connected to the Auto Liability Claims.

45. Mr. Rubenstein is presently counsel of record for the Debtors and their drivers in approximately 36 active lawsuits involving Auto Liability Claims where the Debtors and their

drivers are co-defendants, and approximately 5 active lawsuits against the Debtors wherein a Protected Driver is not a named co-defendant. In addition, Mr. Rubenstein oversees and monitors outside counsel in approximately 12 active lawsuits involving Auto Liability Claims where the Debtors and their drivers are co-defendants. Mr. Hardy is personally overseeing and managing outside counsel in approximately 15 active lawsuits involving Auto Liability Claims where the Debtors and their drivers are co-defendants, and approximately 2 active lawsuits against the Debtors wherein a Protected Driver is not a named co-defendant. There are 9 outside law firms and Mr. Rubenstein representing the Debtors and/or their drivers involving Auto Liability Claims

46. Mr. Rubenstein handles all aspects of his cases from commencement to conclusion, including pleadings, discovery, motions, court appearances, trial and appeal, and settlement negotiations. He spends approximately 50-plus hours per week in the course of managing his own case load and monitoring outside counsel with respect to the Auto Liability Claims.

47. Mr. Hardy spends approximately 30-35 hours per week in the course of managing and administering the Auto Liability Claims (including oversight and management of cases handled by outside counsel).

48. The Debtors are also responsible for paying the outside law firms' attorneys' fees, costs, and expenses incurred in defending the Auto Liability Claims.

**<u>The Need for Requested Relief</u>**

49. If the Civil Actions are not stayed in their entirety, there will be an immediate and continuing adverse impact on the estates' resources, which will interfere with the Debtors' efforts to administer the Chapter 11 Cases. Any continuation of the Civil Actions against the Protected Drivers is effectively a continuation against the Debtors—in violation of the automatic stay—because the Debtors are liable for Protected Drivers' actions taken in the course of their

employment under the doctrine of *respondeat superior* and/or other agency doctrines and/or law. In other words, the Debtors will remain the real parties in interest in the Civil Actions if those actions are not stayed in their entirety. Further, due to the Debtors' obligation to manage and administer Auto Liability Claims, continuation of the Civil Actions even without the Debtors will continue to impose direct costs to the Debtors' estates. Continuation of the Civil Actions will result in an adverse impact on the ability of the Debtors to effectively and efficiently manage the Chapter 11 Cases, to the detriment of all creditors and parties-in-interest.

### Nature of Relief Requested

50. To guard against the severe and irreparable harm that the Debtors would suffer in the event that Defendants are permitted to continue or commence civil actions against the Protected Drivers during the Debtors' bankruptcy proceeding, the Debtors seek a preliminary injunction under 11 U.S.C. §§ 105(a) and 362(a) enjoining the continuation or commencement of any action by the Defendants seeking to (i) hold the Protected Drivers liable for Auto Liability Claims, and/or (ii) lift the stay to proceed solely against excess coverage that may be available pursuant to the Excess Indemnity Contracts. In the alternative, the Debtors seek a declaration that 11 U.S.C. § 362(a) applies to prohibit the commencement or continuation of Auto Liability Claims against the Protected Drivers and/or against the excess coverage. The Debtors also seek a temporary restraining order to immediately effectuate the requested injunctive or declaratory relief pending a full hearing on the request for a preliminary injunction.

### COUNT I
### Preliminary Injunctive Relief, 11 U.S.C. §§ 105(a) and 362(a)

51. The Debtors incorporates by reference paragraphs 1 through 50 of this Complaint as if fully set forth herein.

52. Section 105(a) of the Bankruptcy Code authorizes and empowers this Court to issue any orders that will further the purposes and goals of the Bankruptcy Code, assist in the orderly and effective administration of the Debtors' Chapter 11 Cases, aid in the preservation of the assets of the Debtors' estates and aid in the formulation and confirmation of a chapter 11 plan that maximizes recovery to all of the Debtors' creditors.

53. Pursuant to sections 362 and 105(a) of the Bankruptcy Code, this Court may enjoin creditor actions against third parties where necessary to prevent an adverse impact on the Debtors' estate or to assure the orderly administration of the Debtors' chapter 11 estate and proceedings.

54. An injunction is appropriate to prohibit the Defendants from filing or continuing to prosecute Auto Liability Claims against the Protected Drivers and/or seeking to recover from the Excess Indemnity Contracts while the Chapter 11 Cases remain pending, and is critical to the Debtors' ability to proceed with and achieve the purpose for which it commenced the Chapter 11 Cases.

55. The injunctive relief sought by the Debtors is necessary to provide the Debtors an unobstructed opportunity to obtain a global and fair determination of all current and future Auto Liability Claims, within the confines of the chapter 11 process. This opportunity may evaporate if the Protected Drivers are left to defend the Civil Actions on their own.

56. The Debtors' prospects for a successful chapter 11 plan are high. The Debtors entered bankruptcy in good faith in an effort to equitably accomplish an orderly liquidation and wind-down, and they have sufficient resources to fund the costs of the Chapter 11 Cases.

57. The failure to grant the requested injunction would irreparably harm the Debtors' efforts and effectively deprive the Debtors of the breathing spell afforded by the automatic stay.

2714777.2 115719-100281

58. First, the prosecution of Auto Liability Claims against the Protected Drivers and/or efforts to recover under the Excess Indemnify Contracts would amount to continued prosecution of those claims against the Debtors. Judgements against the Protected Drivers would have the effect of fixing claims against the Debtors outside of the Chapter 11 Cases. Further, under the doctrines of collateral estoppel and res judicata, there is a risk that resolution of issues in litigation of the Auto Liability Claims against Protected Drivers might bind the Debtors. Litigation of the Auto Liability Claims against the Protected Drivers also creates the substantial risk that statements, testimony and other evidence generated in those proceedings will be used to establish liability without the Debtors' having an opportunity to challenge such evidence. These indemnification, claim preclusion and evidentiary issues, among others, would compel the Debtors to actively monitor, participate in and defend litigation of the Auto Liability Claims against the Protected Drivers, undermining the automatic stay and requiring the resources of key personnel.

59. At the same time, the harm, if any, an injunction might cause the Defendants would be minimal. While an injunction might delay the efforts by certain Defendants to litigate Auto Liability Claims against the Protected Drivers, the Defendants will have the opportunity to assert proofs of claim directly against the real parties in interest, the Debtors, in these Chapter 11 Cases.

60. The Defendants also cannot demonstrate harm based on the speculation that an injunction will deprive them of ultimate payment for their claims. Many—if not all—of the Protected Drivers are likely judgment-proof with respect to the amounts sought in the Civil Actions. As such, as a practical matter—aside from agency liability—any judgment against a Protected Driver will ultimately be asserted against the Debtors.

2714777.2 115719-100281

61. Finally, the public interest weighs in favor of an injunction. There is a strong public interest in a successful chapter 11 case and an equitable distribution to creditors. The Defendants should not be afforded the opportunity to obtain default judgments for the full amount of claimed damages against unrepresented employees, which will then be asserted against the Debtors at the expense of other general unsecured creditors.

62. Accordingly, an injunction barring the Defendants from commencing or continuing any Auto Liability Claims against any Protected Driver while the Debtors' Chapter 11 Cases remain pending is appropriate and essential to the orderly and effective administration of the Debtors' estates, and good cause exists for the entry of injunctive relief pursuant to sections 105(a) and 362(a) of the Bankruptcy Code and Bankruptcy Rule 7065.

WHEREFORE, the Debtors respectfully request that this Court: (a) after notice and a hearing, issue a preliminary injunction prohibiting the filing or continued prosecution of Auto Liability Claims while the Chapter 11 Cases remain pending, pursuant to sections 105 and 362 of the Bankruptcy Code; and (b) grant such other and further relief as the Court may deem proper.

## COUNT II:
### Declaratory Relief, 11 U.S.C. § 362(a)

63. The Debtors incorporate by reference paragraphs 1 through 62 as if fully set forth herein.

64. Section 362(a)(1) of the Bankruptcy Code provides that the automatic stay prohibits the "commencement or continuation . . . of a judicial . . . proceeding against the debtor that was or could have been commenced before the commencement of the case under this title, or to recover a claim against the debtor that arose before the commencement of the case under this title." 11 U.S.C. § 362(a)(1). Here, both (i) the continuation or commencement of Auto Liability Claims against the Protected Drivers, and (ii) efforts to recover from the Excess Indemnity Contracts

15

under which the Debtors have management, administration and defense obligations, are unequivocally efforts to recover claims against the Debtors, and are automatically stayed. As described above, the Defendants (plaintiffs in the underlying Civil Actions) will undoubtedly argue that the Debtors are responsible, as a matter of law, for any judgments arising out of Auto Liability Claims against the Protected Drivers. Thus, the commencement or continuation of Auto Liability Claims against the Protected Drivers can have only one purpose: the liquidation and recovery of claims against the Debtors. Such actions are expressly enjoined by the automatic stay.

65.   Additionally, the automatic stay under section 362(a)(1) may extend of its own force to enjoin actions against parties who share such an identity of interest with the debtor that the debtor is in effect the real-party defendant. Here, the Protected Drivers share such an identity of interest with the Debtors that the Debtors would be, in effect, the real-party defendants in Auto Liability Claims brought against the Protected Drivers. As discussed above, litigation of the Auto Liability Claims against the Protected Drivers would effectively liquidate claims against the Debtors and further creates risks of claim and issue preclusion as well as evidentiary prejudice for the Debtors. In view of this, there can be no doubt that the Debtors are in fact the real-party defendants in any suit seeking to liquidate and recover on an Auto Liability Claim against a Protected Driver. Accordingly, it is clear that the injunctive or declaratory relief sought by the Debtors in this motion is necessary to protect both the integrity of the bankruptcy proceeding and the Debtors' prospects for a successful and equitable resolution of the Chapter 11 Cases.

WHEREFORE, the Debtors respectfully request that this Court: (a) after notice and a hearing, enter an order and judgment declaring that the filing or continued prosecution of Auto Liability Claims while the Debtors Chapter 11 Cases remain pending violates the automatic stay

imposed by section 362(a)(1) of the Bankruptcy Code; and (b) grant such other and further relief as the Court may deem proper.

## COUNT III:
### Application for Temporary Restraining Order

66. The Debtors incorporate by reference paragraphs 1 through 65 as if fully set forth herein.

67. To preserve the effectiveness of the automatic stay prior to the Court's full hearing on the Debtors' request for declaratory and injunctive relief, and to prevent the foregoing harmful effects upon the Debtors' administration of the Chapter 11 Cases, the Debtors request that, with shortened notice, the Court issue a temporary restraining order prohibiting and enjoining the Defendants from filing or continuing to prosecute Auto Liability Claims until this Court has issued a ruling on the Debtors' request for declaratory and/or injunctive relief.

68. The issuance of a temporary restraining order is warranted for the reasons already set forth herein and as more fully set forth in the Motion.

WHEREFORE, the Debtors respectfully request that this Court enter a temporary restraining order: (a) prohibiting the Defendants from filing or continuing to prosecute any Auto Liability Claims until the Court decides whether to grant the Debtors' request for an injunction or declaratory relief; and (b) granting such other and further relief as the Court may deem just and proper.

Dated:  March 14, 2019                Respectfully submitted,

                                      **GIBBONS P.C.**

                                      By: /s/ *Karen A. Giannelli*
                                          Karen A. Giannelli, Esq.
                                          Mark B. Conlan, Esq.
                                          Brett S. Theisen, Esq.
                                          One Gateway Center

17

2714777.2 115719-100281

Newark, New Jersey  07102
Telephone:  (973) 596-4500
Facsimile:   (973) 596-0545
E-mail:  kgiannelli@gibbonslaw.com
　　　　mconlan@gibbonslaw.com
　　　　 btheisen@gibbonslaw.com

*Counsel to the Debtors
and Debtors-in-Possession*